UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART MANAGO,<br><br>               Plaintiff,<br><br>     v.<br><br>KELLY SANTORO, ET. AL.,<br><br>               Defendant. | Case No. 1:21-cv-01464-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION<br><br>ORDER TO CLERK TO ADD DEFENDANTS' NAMES TO DOCKET AND TO ASSIGN A DISTRICT COURT JUDGE<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. Nos. 10, 11) |

## I. BACKGROUND AND FACTS

Pending before the Court are Plaintiff's first and second motions for a preliminary injunction filed on January 27 and February 22, 2022, respectively. (Doc. Nos. 10, 11). For the reasons set forth below, the undersigned recommends the district court deny the motions.

**A. Allegations in Complaint**

Plaintiff Stewart Manago initiated this action as a prisoner proceeding *pro se* by filing a civil rights complaint under 42 U.S.C. § 1983 while incarcerated in North Kern State Prison. (Doc. No. 1). Plaintiff paid the filing fee to proceed in this action. (Receipt No. CAE1000049419). Nevertheless, the Complaint remains subject to the screening provisions of § 1915A due to Plaintiff's prisoner status.

The Complaint names the following defendants from North Kern State Prison: Kelly Santoro, Warden; Kevin Hixon, Chief Deputy Warden; J. Jeter, Association Warden; J. Tanben, Facility Captain; S. Jenson, investigative services Lieutenant; I. Quintero, correctional lieutenant; R. Philpott, facility captain; D. Drake, Correctional Counselor; J. Felix, investigative services unit; B. Lomely, investigative services unit; J. Franco, facility sergeant; A. Magailanes, correctional counselor; D. Maciel, correctional counselor; R. Ayala Angeles, gang investigator; R. Reynoso, classification process; R. Williams, classification process, and unknown Defendants numbered 1 through 20.[1]  (Doc. No. 1 at 1-3).

As way of background, Plaintiff was paroled from California State Prison-Sacramento on July 7, 2016.  (*Id.* at 4).  Plaintiff alleges that prior to his parole, he filed a report of illegal activity, including sexual harassment, solicitation to sell drugs in a correctional institution, and conspiracy to murder, against correctional officer Mary Brockett, "psyc. tech" Nate Clair, and correctional officer J. Cole, resulting in their firing.

Apparently, at some point, Plaintiff was rearrested, because on April 20, 2021, he was transferred to North Kern State Prison from West Valley Detention Center.  (*Id*. at 5).  Plaintiff complains that he was placed in secure housing upon processing and should have been placed in general population.  Plaintiff alleges he is being targeted by inmates and correctional staff alike, including but not limited to, receiving false rules violations reports, being labeled a snitch, being the target of assaults, and being improperly labeled a member of the "Black Gorilla Family" when he only had Crip-related tattoos on his body.  (*Id.* at 4-8).  Plaintiff alleges a criminal conspiracy between "members of the California State Prison-Sacramento, California Correctional Institution, and Corcoran State Prison" to subject Plaintiff to a serious risk of harm by seeking a hit on Plaintiff's life because he previous reported criminal activity.  (*Id.* at 19).  As relief Plaintiff seeks a jury trial, general and special damages, medical and mental health related damages, and any other relief deemed appropriate by the court.  (*Id.* at 25).  Plaintiff does not seek any injunctive relief in his Complaint.  (*Id*.).

---

[1] The docket stops listing defendants after B. Lomely.  (*See* docket).  The Court directs the Clerk to update the docket accordingly to include all named defendants.  (Doc. No. 1 at 1-3).

Notably, on March 14, 2022, Plaintiff was transferred to California Medical Facility located in Vacaville, California.  (Doc. No. 12).

**B. Preliminary Injunction Motions**

Plaintiff's first and second motion for a preliminary injunction consists of 89 and 90 pages, respectively. (Doc. Nos. 10, 11).  Plaintiff's declaration is incorporated in his first motion. (Doc. No. 10 at 10-31).  Pages 33 through 89 contain inmate grievances and responses thereto, including unrelated pleadings and grievances submitted by an inmate named Zuri Sanakabis Young.  (*Id*. at 33-89, 59-89).  In Plaintiff's second motion, pages 19 through 90 contain his inmate grievances and responses thereto.  (Doc. No. 11 at 20-90).

Related to the Complaint, Plaintiff contends in his first motion that Defendants are involved in a retaliatorily criminal conspiracy and have a hit on his life, so that he does not testify against the illegal activities of the three correctional staff.  (Doc. No 10 at 5).  Plaintiff requests that the Court direct the United State Marshal "to make citizen's arrests against all CDCR-correctional staff" involved in the criminal conspiracy.  (*Id*. at 1).  Plaintiff also asks for a preliminary injunction to: (1) require CDCR to transfer Plaintiff to a medical facility where he can receive proper medical and mental health treatment; (2) prohibit CDCR from transferring Plaintiff to PBSP or other prisons where Plaintiff may be placed in unlawful danger due to the hit on his life and from telling other inmates he is a "snitch"; (3) protect him under the PREA, the California Whistleblower Act, and the federal Whistleblower Act; (4) award any other relief the Court deems appropriate.  (*Id.* at 9).  The exhibits Plaintiff attaches to his motion document that Plaintiff was in fear for his safety.  (*Id.* at 33-39).  In 2009, a confidential information advised correctional officials that Plaintiff was assaulted because "things 'weren't adding up' and Manago had to 'go' and the Crips had found out Manago had been jumped on C yard.'" (*Id.* at 35).  To the extent discernable, over the years, there were hits on Plaintiff's life by two different gangs, both the Black Guerilla Family and the Crips, who believed Plaintiff was a snitch and the information was corroborated by investigation.  (*Id.* at 37) (related to threat in 2014 by Black Guerilla Family associates); (*Id.* at 38) (related to a 2016 threat on Plaintiff's life by gang members); (*Id.* at 43)(concerning June 2021 threat).

3

Plaintiff's second motion claims Defendants are improperly opening his mail from the office of internal affairs, his attorneys, and from the federal courts in attempt to interfere with his instant civil rights action. (Doc. No. 11 at 5). In closing, Plaintiff asks for similar, but more limited, relief to his first motion requesting that the Court enjoin the ongoing criminal conspiracy involving correctional staff and the "inmate task force inmates" who would carry out the hit. (*Id.* at 6).

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders. A preliminary injunctive requires "notice to the adverse party." Fed. R. Civ. P. 65(a)(1). A temporary restraining order may be issued "without notice" only if "specific facts in an affidavit or a verified complaint clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating, "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders and preliminary injunctions are governed by the same standard, with the exception that preliminary injunctions require notice to the adverse party. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126 (E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a). Eastern District of California Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date. Local Rule 231(a)-(b) (E.D. Cal. 2019). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). Both preliminary injunctions and temporary restraining orders require briefs on the relevant issues, affidavits, and proposed order for a bond. L.R. 230.

Because a temporary restraining order or preliminary injunction is "an extraordinary remedy," it may be issued only if the moving party establishes: (1) likelihood of success on the

merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party bears the burden of clearly satisfying all four prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A TRO will not issue if the moving party merely shows irreparable harm is possible – a showing of likelihood is required. *Id.* at 1131. The Ninth Circuit also has a second test, holding that a party requesting relief is entitled to a preliminary injunction if it demonstrates: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Zepeda v. U.S. Immigr. & Naturalization Serv*, 753 F.2d 719, 727 (9th Cir. 1985); *see also McKinney v. Hill*, 925 F.2d at 1470 (9th Cir. 1991) (noting same).

The injunctive relief an applicant requests must relate to the claims brought in the complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Absent a nexus between the injury claimed in the motion and the underlying complaint, the court lacks the authority to grant Plaintiff any relief. *Id.* at 636.

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials. In such cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *Villery v. California Dep't of Corr.*, 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016). As the Ninth Circuit has observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000). The court's jurisdiction is "limited

to the parties in this action" and the pendency of an action "does not give the Court jurisdiction over prison officials in general or over the conditions of an inmate's confinement unrelated to the claims before it." *Beaton v. Miller*, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020). Further, state governments have "traditionally been granted the widest latitude in the dispatch of [their] own internal affairs." *Rizzo v. Goode*, 423, U.S. 362, 378 (1976) (citations omitted). This deference applies even more strongly when the court is asked to involve itself in the administrative decisions of a prison. *See Turner v. Safely*, 482 U.S. 78, 85 (1987); *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

### III. DISCUSSION

Based on the foregoing, the undersigned finds both motions facially deficient and otherwise lacking merit to warrant issuance of injunctive relief. At the outset, although Plaintiff moves for a preliminary injunction, he does not certify that notice was given to Defendants. Nor, to the extent he seeks a temporary restraining order, does he certify in writing the efforts, if any, which he made to give notice and reasons supporting why notice should not be required. Fed. R. Civ. P. 65(b). Further, Plaintiff fails to address any of the four factors necessary to warrant an issuance of a preliminary injunction or temporary restraining order. Finally, Plaintiff seeks only damages and does not seek injunctive relief in his Complaint. Thus, facially, the motion is deficient.

Nonetheless, in applying the four factors, significant here is Plaintiff's unlikelihood of success on the merits and inability to show that he is likely to suffer irreparable harm. The Complaint is difficult to discern. The inmate grievances and responses thereto that Plaintiff attaches to his second motion assist in shedding light onto the circumstances.

It appears for a period of years spanning at least 2009 to 2021 Plaintiff has been targeted by two California prison gangs: the Black Guerilla Family and the Crips. Correctional officials have noted the risk to his personal safety as a result and have indicated he should not be housed in general population. Plaintiff, on the other hand, contends his secured housing placement is done in retaliation for reporting criminal activities of three correctional officials and is not gang related. Plaintiff requests a litany of relief in his first motion, mainly directed at controlling where

1   Plaintiff is incarcerated, *e.g.,* a facility where he can receive proper medical and mental health
2   treatment and not a place where his life is in danger

3   As a general rule, prisoners have no expectation they will remain in any particular facility
4   during their confinement and prison officials have broad authority to transfer prisoners from one
5   facility to another. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (holding prisoners
6   maintain no expectation that they will be confined in any particular prison); *see also Meachum v.*
7   *Fano*, 427 U.S. 215, 225 (1976) (holding prisoners have no expectation that they will be confined
8   in any particular facility).  Significant here is the fact that Plaintiff is no longer confined in Kern
9   Valley State Prison having been transferred, on March 14, 2022, to the California Medical
10  Facility in Vacaville.  Thus, Plaintiff's request to be transferred to a medical facility is moot.

11  As to the imminent harm prong, Plaintiff has not shown he is likely to suffer irreparable
12  harm to warrant the extraordinary exercise of immediate injunctive relief to direct where the
13  CDCR houses Plaintiff.  Although Plaintiff believes his life is more at risk in certain correctional
14  facilities, "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting
15  a preliminary injunction." *Mester v. Dickinson*, 2010 WL 1658472, *2 (April 23, 2010) (citing
16  *Caribbean Marine Servc. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (other citations
17  omitted)).  A presently existing actual threat must be shown.  *Id.* (citing *Zenith Radio Corp. v.*
18  *Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80
19  (9th Cir. 1997), *cert. denied*, 523 U.S. 1020 (1998); *Caribbean Marine,* 844 F.2d at 674).  While
20  an inmate attack could indeed cause Plaintiff harm, there are no facts set forth that an attack and
21  irreparable harm is imminently likely because Plaintiff has faced these circumstance for a period
22  of years and there is no indication that correctional officials have acted with deliberate
23  indifference to his risk of harm.  *See Watson v. USP Lompoc*, 2011 WL 941365 * 1-*2 (C.D. Cal.
24  March 17, 2011) (denying federal prisoner plaintiff's motion for a preliminary inunction seeking
25  to enjoin prison from relocating him).  Further, correctional officials have a constitutional duty to
26  protect an inmate from "violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S.
27  825, 833 (1984).

28  Finally, this Court must have personal jurisdiction over the parties to be enjoined.  The

Court may not enjoin defendants not yet served or before the Court. *Zepeda*, 753 F.2d 719, 727 (9th Cir. 1983). Here, screening remains due and no Defendants have received service of process. Thus, the Court lacks personal jurisdiction over the parties.

Accordingly, it is **ORDERED**:

1. The Clerk of Court shall correct the docket to reflect the names of the Defendants identified on Plaintiff's Complaint to also include: J. Franco, facility sergeant; A. Magailanes, correctional counselor; D. Maciel, correctional counselor; R. Ayala Angeles, gang investigator; R. Reynoso, classification process; R. Williams, classification process, and unknown defendants numbered 1 through 20.

2. The Clerk of Court shall assign a district judge to the case.

It is further **RECOMMENDED**:

Plaintiff's first and second motion for a preliminary injunction (Doc. Nos. 10, 11) be DENIED.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case under the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  April 15, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE