UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART MANAGO,<br><br>            Plaintiff,<br><br>    v.<br><br>KELLY SANTORO, et al.,<br><br>            Defendants. | Case No.  1:21-cv-01464-ADA-HBK (PC)<br><br>FINDINGS AND RECOMMENDATION TO DISMISS CASE[1]<br><br>(Doc. No. 20)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's First Amended Complaint. (Doc. No. 20, "FAC").  For the reasons set forth below, the undersigned recommends the district court dismiss the First Amended Complaint because it fails to state any cognizable constitutional claim.

**SCREENING REQUIREMENT**

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). The Court's review is limited to the complaint, exhibits attached, and materials incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a pro se litigant on how

to cure the defects.  Such advice "would undermine district judges' role as impartial decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . . ."  *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

## BACKGROUND AND SUMMARY OF OPERATIVE COMPLAINT

Plaintiff initiated this action by filing a prison civil rights complaint pursuant to 42 U.S.C. 1983.  (Doc. No. 1).  On July 19, 2023, the undersigned screened the complaint and found it failed to state any cognizable constitutional claim.  (Doc. No. 19).  Plaintiff timely filed a first amended complaint.  (Doc. No. 20).

The FAC is thirty-three (33) pages long, including six pages of exhibits, and names fifteen Defendants and an additional Does 1-20.  (*Id*. at 1, 3-4).  The events giving rise to the Complaint took place at North Kern State Prison ("NKSP") in Delano, CA.  (*Id*. at 3).  The named Defendants include the following NKSP staff: Warden Kelly Santoro, Chief Deputy Warden Kevin Hixon, Associate Warden J. Jeter, Investigative Services Unit ("ISU") Lieutenant S. Jensen, Correctional Lieutenant I. Quintero, Facility Lieutenant R. Philpott, Correctional Counselor D. Drake, ISU Sergeant J. Felix, ISU Sergeant B. Lomely, Facility Sergeant J. Franco, Correctional Counselor A. Magallanes, Correctional Counselor D. Maciel, ISU Investigator R. Ayala Angeles, E. Reynoso, and K. Williams,  (*Id*. at 1, 3-4).

The FAC sets forth the following facts, which are presumed to be true at this stage of the screening process.  On April 20, 2021, Plaintiff was transferred from West Valley Detention Center to NKSP.  (*Id*. at 3 ¶ 17).  Members of the "ISU and IGI" units at NKSP interviewed Plaintiff and he requested to be placed in General Population, noting that he had no documented enemies at NKSP.  (*Id*. at 5 ¶ 24).  However, Defendant Quintero ordered Plaintiff to be placed in the administrative segregation unit ("ASU") in part based on his alleged membership in the Black Guerilla Family ("BGF").  (*Id*. at 6 ¶¶ 26-29).  Plaintiff disputes he has an affiliation with BGF but instead is affiliated with the Project Watts Crips.  (*Id*. ¶¶ 28-29).  The institutional

classification committee ("ICC") held a hearing to review Plaintiff's ASU placement on April 29, 2021. (*Id*. at 9 ¶ 38). Defendants Santoro, Drake, Magallanes, Philpott, and Does 1-20 conducted the hearing. (*Id*.). Defendant Santoro asked Plaintiff if he was a general population or special needs yard (SNY) inmate. (*Id*. ¶ 39). Plaintiff stated that he was a general population inmate and requested to be released to general population. (*Id*. ¶ 40). Prison officials advised Plaintiff they had evidence that some CDCR correctional officers and inmates had placed a "hit" on him in response to his prior reports against CDCR employees at other facilities, which posed a threat to his safety. (*Id*. at 9 ¶¶ 43, 54). Plaintiff asserts that the ICC was in fact retaliating against him for reporting misconduct by staff at other CDCR facilities. (*Id*. at 20-21 ¶¶ 75-76). Plaintiff further alleges the same officials failed to protect Plaintiff from this alleged conspiracy by arresting those involved. (*Id*. at 10 ¶ 47, 14 ¶ 52). Finally, Plaintiff claims Defendant Tangen was deliberately indifferent to his safety by "deliberately questioning plaintiff in the presence of other inmates, and falsely putting an alleged BGF-Prison Gang Label on plaintiff as a form of retaliation, by conducting his interview of plaintiff on the tier of ASU." (*Id*. at 17 ¶ 65).

The FAC contends prison officials violated Plaintiff's due process rights when they failed to give him fair notice of his placement in ASU, failed to assign him an Investigative Employee in preparation for a classification hearing, violated his right to present witnesses at his ICC hearing, and denied him non-disciplinary privileges. (*Id*. at 8 ¶ 36; 9 ¶ 42).

Liberally construed, the FAC also alleges a claim of deliberate medical indifference because Plaintiff arrived at NKSP with injuries from a bus accident, including stomach cramps, foot pain from a broken foot, back pain, arm pain, emotional problems, and extreme nervousness, but due to his placement in ASU he was unable to access medical care. (*Id*. at 24 ¶ 86).

As relief, Plaintiff seeks $500,000 in general damages, punitive damages, compensatory damages, attorney's fees, and costs of suit. (*Id*. at 25).

**APPLICABLE LAW AND ANALYSIS**

**A. Federal Rule of Civil Procedure 8**

Rule 8 states that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). To ensure compliance with Rule 8, courts of the Eastern District of California generally

limit complaints to twenty-five pages. *See Lal v. United States*, 2022 WL 37019, at *2 (E.D. Cal. Jan. 3, 2022); *Williams v. Corcoran State Prison*, 2022 WL 1093976, at *1 (E.D. Cal. Apr. 12, 2022). The page limit includes the complaint itself and any exhibits, for a total of twenty-five pages. *See Rivas v. Padilla*, 2022 WL 675704, at *2 (E.D. Cal. Mar. 7, 2022). "[A] lengthy complaint can violate Rule 8 if a defendant would have difficulty responding to the complaint." *Skinner v. Lee*, 2021 U.S. Dist. LEXIS 251321, 2021 WL 6617390, *2-*3 (C. D. Cal. May 20, 2021) (citing *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011). A district court has the power to dismiss a complaint when a plaintiff fails to comply with Rules 8's pleading directives. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981). When the factual elements of a cause of action are not organized into a short and plain statement for each particular claim, a dismissal for failure to satisfy Rule 8(a) is appropriate. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988); *see also Nevijel*, 651 F.2d at 674.

Under Rule 8, allegations of facts that are extraneous and not part of the factual basis for the particular constitutional claim are not permitted. *See Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (recognizing that Rule 8 can be violated when the plaintiff provide too much information). As an initial matter, and as further detailed below, Plaintiff's FAC fails to comply with Rule 8 due to its failure to state short and plain statements.

In addition to exceeding the 25-page limit, Plaintiff's FAC is anything but short and plain. The FAC consists of 88 separately numbered paragraphs, many of which are repetitive, recite extraneous details, and offer speculative conclusions that are only tangentially relevant to Plaintiff's claims. The Court previously advised Plaintiff to "focus his pleadings on shorter and plainer statements that succinctly explain the basis for his constitutional claims" but instead he has largely repeated the same deficient claims while adding 24 factual averments and six pages of exhibits. (*See* Doc. No. 19 at 5-6).

The FAC also violates Rule 8 because it involves so-called "shotgun pleading." Shotgun pleading occurs when: (1) one party pleads that multiple parties did an act, without identifying which party did what specifically; or (2) when one party pleads multiple claims and does not

1  identify which specific facts are allocated to which claim. *Hughey v. Camacho*, 2014 WL
2  5473184, at *4 (E.D. Cal. Oct. 23, 2014) (*citing In re Mortgages Ltd.*, 2013 WL 1336830, at *12
3  (Bankr. D. Ariz. March 29, 2013); *Magulta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).
4       Here, the FAC describes a series of factual allegations involving 15 named Defendants
5  and Does 1-20. (*See generally* Doc No. 20). Many of Plaintiff's claims recite a long list of
6  Defendants who were allegedly involved in constitutional violations without specifying what
7  act(s) each Defendant committed that constituted the violations. (*See, e.g.*, Doc. No. 20 at 21
8  ¶ 76) ("Plaintiff alleges that . . . defendants Santoro, Hixon, Jeter, Jensen, Philpoit [sic], Quintero,
9  Drake, Lomely, Franco, Magallanes, Maciel, Tangen, Ayala Felix, and Does 1-20 conspired to
10 Abuse the Classification [process], by engaging in acts of retaliation . . .") As the Court
11 previously advised Plaintiff, for his complaint to be "plausible" and survive screening, he must
12 plead sufficient factual detail to allow the court to reasonably infer that each named defendant is
13 liable for the misconduct alleged. (Doc. No. 19 at 6) (citing *Iqbal*, 556 U.S. at 678; Moss 572
14 F.3d at 969).
15      Despite this guidance, Plaintiff still fails to provide the requisite detail as to each named
16 Defendant sufficient to state cognizable claims, and instead asserts most of his claims in blanket
17 fashion against all Defendants. This lack of clarity permeates the entire FAC and is a sufficient
18 basis for dismissal. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming a
19 district court's dismissal of an entire complaint that made "everyone did everything allegations"
20 without leave to amend because "[t]he district court made clear . . . that plaintiffs must amend
21 their 'shotgun pleading' to 'state[ ] clearly how each and every defendant is alleged to have
22 violated plaintiffs' legal rights" and plaintiffs failed to do so); *see also Bautista v. Los Angeles*
23 *Cnty.*, 216 F.3d 837, 840–841 (9th Cir. 2000) (affirming dismissal of a complaint with prejudice
24 where the complaint failed to include short and plain statement of claim of each of the 51
25 plaintiffs and failed to state each plaintiff's claim in separate count).
26     **B. Doe Defendants**
27      Plaintiff alleges various claims against unspecified Does (1) through (20), whom he
28 describes as "Correctional Staff and inmates" and refers to collectively as "Inmate Task Force."

(Doc. No. 20 at 4 ¶ 16). Rule 10(a) of the Federal Rules of Civil Procedure requires a plaintiff to include the names of the parties sued in the action. Fed. R. Civ. P. 10(a). The use of Doe defendants is generally disfavored in federal court because the United States Marshal cannot serve a summons and complaint on an anonymous defendant. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

"A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, and so on, but he must allege sufficient facts to show how each doe defendant individually violated his constitutional rights. If the plaintiff does so, he may be given leave to obtain the names of doe defendants during discovery and seek leave to amend to name those defendants." *Finefeuiaki v. Maui Police Dep't*, 2018 WL 4839001, at *3 (D. Haw. Oct. 4, 2018) (citing *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)).

Here, Plaintiff's claims against Does (1) through (20) appear to be entirely speculative. The FAC is devoid of facts alleging wrongdoing by these Doe defendants. Rather, it asserts vaguely throughout the FAC that Does (1) through (20) helped facilitate the retaliatory acts against Plaintiff but does not provide any dates or specific facts to substantiate these assertions. (*See generally* Doc. No. 20). Because Plaintiff does not allege sufficient facts to "show how each doe defendant individually violated his constitutional rights" he fails to state a claim as to these Defendants.

**C. First Amendment Retaliation**

It is clear prisoners have First Amendment rights to file a grievance or civil rights complaint against correctional officials. *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). A retaliatory motive may be shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir.2003);

*McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011). Mere speculation that a defendant acted out of retaliation is not sufficient. *Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir. 2014) (citing cases).

          1.  <u>Placement in ASU</u>

Liberally construed, Plaintiff alleges all named Defendants employed at NKSP retaliated against him by placing him in ASU status because he reported wrongdoing by CDCR employees at CSP-Sacramento, HDDC, and SVSP in 2016.[2] (*See* Doc. No. 20 at 25 ¶ 88). The FAC asserts that all Defendants "conspired to abuse the classification [process] by engaging in acts of retaliation against plaintiff for filing a PREA [claim], when they retained plaintiff in NKSP-ASU as a direct result of plaintiff's testimony against Officer M. Brockett at SAC; and Psych Tech M. Clair at SVSP[.]" (Doc. No. 21 ¶ 76). The FAC is devoid of facts, however, showing that Plaintiff's ASU placement was a "direct result" of his testimony against the CDCR officers from more than 5 years earlier. Indeed, the FAC alleges no facts to support a link to those earlier events. Thus, the FAC fails to establish a retaliatory motive for Plaintiff's ASU classification as to any of the fifteen named Defendants. Further, the long delay between Plaintiff's testimony and the alleged retaliation at NKSP weakens any inference of a causal connection, as does the failure to allege any facts showing coordination between employees of CSP-Sacramento, HDDC, or SVSP with those at NKSP involved in Plaintiff's placement in ASU.

The FAC asserts a retaliatory motive to Defendant Franco for Plaintiff's ASU placement because Franco was a defendant in a 2012 case filed by Plaintiff, *Manago v. Gonzalez*, and Franco allegedly advised other NKSP staff that Plaintiff had a history of filing lawsuits and grievances. (Doc. No. 20 at 4 ¶¶ 20-21). The mere fact that Defendant Franco relayed this information to other NKSP staff, however, does not plausibly establish that it was the *cause* of Plaintiff's classification as a member of BGF or detention in ASU. Nor does the FAC assert any

---

[2] While the FAC does not specify when Plaintiff reported the misconduct by CDCR staff at these three facilities, here the Court liberally construes Plaintiff's pro se pleadings and garners the relevant date from Plaintiff's original complaint. *See Yong Lor v. Asuncion*, 2018 WL 6177228, at *1 (C.D. Cal. Aug. 21, 2018). The original complaint states that Plaintiff reported the misconduct in all three cases prior to him paroling from CDCR on July 7, 2016. (Doc. No. 1 at 4 ¶ 1).

other facts to support this theory. Without more, Plaintiff's claims amount to mere speculation and fail to state a claim.

### 2. Defendant Tangen's Interview

The FAC also asserts that Defendant Tangen interviewed Plaintiff on the tier of the ASU unit "in the presence of other inmates" and labeled him as a member of BGF to retaliate against Plaintiff. (*Id*. at 17 ¶ 65). The FAC does not set forth any direct or circumstantial evidence to support Plaintiff's theory that Defendant Tangen's actions were motivated by Plaintiff's protected First Amendment conduct, whether statements by Defendant Tangen, timing of the actions, or other indicia. Indeed, Plaintiff does not identify any First Amendment conduct that prompted the alleged retaliation. To the extent the FAC alleges that Tangen was retaliating against Plaintiff's First Amendment conduct more than five years earlier at three other CDCR facilities, the Court finds this too remote and speculative a connection. Nor does the FAC allege facts to indicate Plaintiff was either harmed by Defendant Tangen's actions or that it chilled his First Amendment rights. *See Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Accordingly, the FAC fails to state a First Amendment retaliation claim based on Defendant Tangen's actions.

### D. Deliberate Medical Indifference

Deliberate indifference to the serious medical needs of an incarcerated person constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To maintain an Eighth Amendment claim premised on prison medical treatment, the prisoner must show that officials were deliberately indifferent to his medical needs. A finding of "deliberate indifference" involves an examination of two elements: the seriousness of the plaintiff's medical need (determined objectively) and the nature of the defendant's response (determined by defendant's subjective state of mind). *See McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997) (en banc). On the objective prong, a "serious" medical need exists if the failure to treat "could result in further significant injury" or the "unnecessary and wanton infliction of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). On the subjective prong, a prison official must know of and disregard a serious risk of harm. *Farmer v. Brennan,*

511 U.S. 825, 837 (1994). Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed. *Estelle,* 429 U.S. at 104-05.

If, however, the official failed to recognize a risk to the plaintiff—that is, the official "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth Amendment. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original). That is because deliberate indifference is a higher standard than medical malpractice. Thus, a difference of opinion between medical professionals—or between the plaintiff and defendant—generally does not amount to deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

An "inadvertent failure to provide medical care" will not sustain a claim, *Estelle*, 429 U.S. at 105, or even gross negligence, *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013). A delay in treatment, without more, is likewise insufficient to state a claim. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). It is only when an official both <u>recognizes</u> and <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). A plaintiff must also demonstrate harm from the official's conduct. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). And the defendant's actions must have been both an actual and proximate cause of this harm. *Lemire*, 726 F.3d at 1074.

Here, Plaintiff makes a single assertion that he arrived at NKSP with untreated injuries and that his retaliatory confinement in ASU caused him pain and suffering. (Doc. No. 20 at 24 ¶ 86). As in Plaintiff's original complaint, the FAC does not specify any Defendant who was aware that Plaintiff had these injuries and failed to provide him timely medical attention. (*See* Doc. No. 1 at 14). As the Court previously advised Plaintiff, to state a plausible deliberate medical indifference claim, Plaintiff must allege that specific prison officials were aware of his serious medical needs and nevertheless failed to provide treatment. (Doc. No. 19 at 12). Here, because Plaintiff again does not name a single Defendant who had the requisite knowledge of his injuries and thereafter failed to act, he fails to state a cognizable deliberate medical indifference

claim.

**E. Due Process Claims**

Here, liberally construed, the Complaint alleges due process violations based on prison officials' error in classifying Plaintiff as a member of BGF, their failure to give him fair notice of his placement in ASU, failure to assign him an Investigative Employee in preparation for a classification hearing, and denial of his request to call witnesses and present evidence. (*Id*. at 8 ¶ 36; 9 ¶ 42).

1. Validation as a Member of BGF

It is well settled that prisoners have no constitutional right to a particular classification status, even if the classification status results in a loss of privileges. *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (expressly rejecting claim that prisoner classification and rehabilitative programs invoked due process protections); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (agreeing inmate had no constitutional right to particular classification status and further finding no independent right under state law). This is because decisions regarding an inmate's classification level or where to house inmates are at the core of prison administrators' expertise. *McKune v. Lile*, 536 U.S. 24, 39 (2002) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *see also Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998).

The FAC alleges Plaintiff's validation as a member of BGF by members of the ICC was erroneous and resulted in his placement in ASU and loss of privileges. Because Plaintiff has no constitutional right to a particular classification status, however, he fails to state a claim against Defendants Santoro, Hixon, Jeter, Quintero, Drake, Magallanes, Maciel, Reynoso, and Williams. Additionally, Plaintiff also has no liberty interest in his eligibility for programming opportunities, such as rehabilitative programs. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (holding that the due process clause does not create a liberty interest in prison education or rehabilitation classes).

2. Notice of Placement in ASU

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons, due process requires that they (1) hold an informal non-adversary hearing

within a reasonable time after the prisoner is segregated, (2) inform the prisoner of the charges against him or the reasons segregation is being considered, and (3) allow the prisoner to present his views. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *overruled in part on other grounds, Sandin v. Connor,* 515 U.S. 472 (1995). *See also* Cal. Code Regs. tit. 15 § 3335(b)(1), (3) (requiring an inmate be provided an Administrative Segregation Unit Placement Notice "at the time of placement in administrative segregation" providing "sufficient information and detail to allow the inmate to present a written or verbal defense to the stated reason(s) and circumstances for segregation during the classification hearing.")

Here, Plaintiff contends that "Defendants Santoro, Drake, Magallanes, Philpott, and Does 1-20 failed to give plaintiff a fair notice of his placement in ASU[.]" (Doc. No. 20 at 8 ¶ 42). The FAC, however, acknowledges that Plaintiff was provided notice of the reasons for his placement, (*see id*. at 8 ¶ 35). The FAC further states that officials held an ASU placement hearing within a reasonable time, and notes Plaintiff was given an opportunity to present his views at the ICC hearing. (*Id*. at 9 ¶¶ 38-41); *see Hampton v. Ryan*, 288 F. App'x 404, 405 (9th Cir. 2008) (granting summary judgment for defendants where plaintiff admitted that he was given notice of the factual basis for the placement and an opportunity to be heard.) Because the FAC alleges no facts that can be inferred that Plaintiff's ASU placement notice or the subsequent hearing were deficient, the FAC fails to state a due process violation.

### 3.  Denial of Plaintiff's Requests at ASU Placement Hearing

The FAC also assigned liability to Defendants Santoro, Drake, Magallanes, Philpott, and Does 1-20 on the basis they "failed to ensure that Plaintiff was assigned an investigative employee (IE)" (Doc. No. 20 at 9 ¶ 42) and to Defendant Tangen on the basis he "violated plaintiff's, right to present witnesses, and evidence at ICC on April 29, 2021." (*Id*. at 8 ¶ 36). However, as the Ninth Circuit noted in *Toussaint*, a hearing on an inmate's ASU placement does not require "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id*. at 1100–01 (citations omitted).

Thus, even if Plaintiff was denied his request for a staff assistant and denied the

opportunity to call witnesses, these actions do not rise to the level of a due process violation in connection with placement in ASU. *See Adkins v. Kernan*, 2019 WL 2598164, at *4 (E.D. Cal. June 25, 2019) (finding that "[p]laintiff does not have the right to a counsel-substitute, which in this case, would be the equivalent of a staff assistant to help Plaintiff prepare" for an ASU placement hearing). Moreover, Plaintiff does not deny that he was permitted to present his views at the ASU placement hearing; and there is no specific requirement that an inmate be permitted to present evidence. *Toussaint*, 801 F.2d at 1100. Thus, the fact that he was not permitted to present unspecified evidence at the hearing does not constitute a due process violation. Accordingly, the FAC does not state a federal constitutional claim based on the alleged denial of these requests related to Plaintiff's ASU placement hearing.

## CONCLUSION AND RECOMMENDATION

Based on the above, the undersigned finds Plaintiff's FAC fails to state any cognizable claim. The FAC suffers from many of the same pleading deficiencies that the undersigned identified and explained to Plaintiff in screening his original Complaint. Plaintiff merely reasserted virtually all the same claims that were asserted in his Complaint, including retaliation, deliberate medical indifference, and various due process violations, without remedying the defects that the Court identified in Plaintiff's original claims. Despite being provided with guidance and the appropriate legal standards, Plaintiff was unable to cure the deficiencies identified above. Thus, the undersigned recommends that the district court dismiss the FAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992)) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint).

Accordingly, it is **RECOMMENDED**:

The First Amended Complaint (Doc. No. 20) be dismissed under § 1915A for failure to state a claim.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge

assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:     November 7, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

14